**James GASTON, Jr., Appellant,**

v.

**J.H. WARE TRUCKING INC., and National Union Fire Insurance, Co., Respondents.**

**No. WD 46215.**

Missouri Court of Appeals, Western District.

Jan. 12, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 2, 1993.

Application to Transfer Denied April 20, 1993.

Thomas E. Thompson, Kansas City, for appellant.

Thomas V. Clinkenbeard, Kansas City, for respondents.

Before LOWENSTEIN, C.J., and SHANGLER and HANNA, JJ.

LOWENSTEIN, Chief Judge.

James Gaston, Jr. appeals the denial of workers' compensation benefits for an injury he suffered. The basic issue before the administrative law judge and this court, is the employment status of Gaston, an over-the-road truck driver who owns his truck, works under a contract which describes him as an independent contractor, hires drivers J.H. Ware Trucking, Inc. (Ware) approves and hauls loads for Ware only. Gaston argued he enjoyed the status of a covered employee of the respondent, Ware. Ware officials contended Gaston worked for them as an independent contractor at the time of his injury. Some thirty-nine months after the administrative law judge heard the case, an opinion issued that agreed with Ware and denied benefits to Gaston. The judge also denied the claim because the injury did not arise out of and in the course of employment. The Labor and Industrial Commission (Commission) affirmed and Gaston appealed.

■ The parties do not dispute the essential facts in this case. A claimant establishes an employer-employee relationship under the Workers' Compensation Law if the claimant worked in the service of the alleged employer and the employer controlled those services. *Lawson v. Lawson,* 415 S.W.2d 313, 319 (Mo.App.1967). Gaston began working for Ware in January 1972. At that time, Ware owned the truck Gaston drove, deducted certain taxes from Gaston's check and paid him by the mile. Gaston's duties included picking up loads, unloading them if necessary, making sure the refrigeration unit kept the correct temperature and filling out certain documents. In October 1972, Ware decided to sell its trucks to the drivers. Gaston bought his own truck and continued to work for Ware until he suffered the injury in 1986.

The 1980 "Contractor Operating Agreement" signed by the parties established the duties and responsibilities of Gaston as owner of the truck and described him as an independent contractor. Among other items, the agreement made Gaston responsible for all maintenance of his truck, which had "J.H. Ware, Inc." painted on the side of it. If the truck needed maintenance, Gaston had to fix it himself or take the truck to Ware's garage in Fulton, Missouri and pay for labor and parts. The agreement gave Ware a full-time permanent lease on Gaston's truck. The lease meant Gaston could only work for Ware unless the company entered into a trip lease agreement with another trucking line on his behalf. The contract required both

parties to give thirty days' notice before either could break the agreement.

In addition to the agreement, other aspects of the relationship between Ware and Gaston changed. A Ware official testified the company no longer deducted taxes or paid for Gaston's health insurance. Gaston now received payment from the company on a commission basis and paid for all his expenses during trips for the company. Gaston could decline to haul loads at his own discretion.

As he did before he signed the agreement, Gaston had to call Ware dispatchers daily when he carried a load because "most of the shippers want to know ... where the stuff is." The dispatchers also told Gaston when and where to pick up goods. Similarly, he continued to pick up loads, put them on the trailer provided by Ware, unload and fill out the same documents.

While working for Ware under this agreement, Gaston suffered an injury in the process of changing a battery on the truck. On March 14, 1986, he picked up a load of fruit and vegetables in California using his truck and a trailer owned by Ware. Gaston had to deliver the refrigerated load in St. Louis and Bloomington, Indiana. During the trip, either in California or Arizona, Gaston discovered his two right batteries had gone down which required him to leave his truck running while he slept. He decided to continue the drive instead of purchasing batteries then because he could buy them cheaper in Independence, Missouri, his home. He intended to purchase the batteries, install them, take a shower and then continue his trip.

When Gaston reached Independence on March 17, he left the trailer with the refrigerator unit running at a shut-down gas station near his home. He drove the truck to his home, turned it off and went to a store to buy two fifty pound batteries. Gaston returned home with the batteries, removed the old ones and cleaned the battery cables. He then carried one battery at a time 35 to 40 feet from his car to the truck, stooped down under the truck, twisted the first battery around and installed it straight. When Gaston began to twist the

second battery, he felt a sharp pain. In the hospital, he found out his aorta had torn apart, a dissection of the descending aorta. Three doctors agreed the lifting of the batteries contributed to the dissection of the aorta which resulted in great permanent disability.

The Commission concluded Gaston was an independent contractor because of the extent of Gaston's control and public policy supports holding parties to their agreements. In addition, even if Gaston was an employee, the Commission found the injury did not occur or arise out of the scope and course of employment. Gaston raises three points on appeal. First, he argues he worked for Ware as an employee for purposes of workers' compensation. Second, he contends he was within the scope and course of his employment when the accident occurred. And third, the injury arose out of the course of his employment.

### I.

■ This court reviews findings of fact in workers' compensation cases in the light most favorable to the award of the Commission and upholds the decision if it is supported by competent and substantial evidence. *Cole v. Town and Country Exteriors*, 837 S.W.2d 580, 583 (Mo.App.1992). Determining the employment status—employee or independent contractor—of a person injured during the scope and course of employment involves a question of law this court may correct. *Miller v. Hirschbach Motor Lines, Inc.*, 714 S.W.2d 652, 654 (Mo.App.1986). This court is not bound by the Commission's conclusion that, as a matter of law, Gaston was an independent contractor instead of an employee.

■ The facts of each case control whether the claimant is an independent contractor or an employee. *Id.* Generally, in an employer-employee relationship, the employer reserves the right to *control* or actually controls the means and details associated with completing the job. *Ceradsky v. Mid–Am. Dairymen, Inc.*, 583 S.W.2d 193, 197 (Mo.App.1979); *Hirsch-*

*bach,* 714 S.W.2d at 656. An independent contractor, on the other hand,

> "is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as to the result of his work." *Hirschbach,* 714 S.W.2d at 656.

This court has held when the evidence does not clearly demonstrate the employer's actual or right to control, the "relative nature of the work test" determines employment status for purposes of workers' compensation. *Ceradsky,* 583 S.W.2d at 199.

> "Where by the very nature of the work relationship or other circumstance ... control is not conspicuous, the right to direct the detail of the work becomes only one indicium of control among others and the inquiry turns to the economic and functional relationship between the nature of the work and the operation of the business served. The inquiry, moreover, tends away from technical common law definitions to the public purpose of the scheme for workmen's compensation."

*Id.* at 198–99. The purpose of workers' compensation is to make industry bear the burden of compensating employees for injuries arising out of the scope and course of employment. *West v. Posten Constr. Co.,* 804 S.W.2d 743, 746 (Mo. banc 1991). The fundamental purpose of the law is to put on the industry the losses sustained by employees arising out of and in the course of employment. *Wolfgeher v. Wagner Cartage Serv., Inc.,* 646 S.W.2d 781 (Mo. banc 1983). In addition, "the law is to be broadly and liberally interpreted ... and is intended to extend its benefits to the largest possible class ... any doubt as to the right of an employee to compensation should be resolved in favor of the injured employee." *West,* 804 S.W.2d at 746.

■ Under *Ceradsky's* "relative nature of the work" test, this court concludes as a matter of law based on the undisputed evidence Gaston was an employee of Ware for workers' compensation purposes. Although Gaston had to call Ware's dispatcher to find out where to pick up loads, deliver loads and keep in touch as to his whereabouts, this court believes those actions do not clearly demonstrate a right to control the means of how Gaston made his trips. Those factors support the way the company runs its trucking business, in general. Because the evidence of control is not that conspicuous, this court applies the "relative nature of the work" test of *Ceradsky* to this fact situation.

■ The factors to consider under the nature of the work test include: the character of the claimant's work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job. *Ceradsky,* 583 S.W.2d at 199.

Truck drivers require a degree of skill, but in this case, Gaston did not use his skill as a separate calling or enterprise. He worked only for Ware for fourteen years until his accident. Gaston could haul only Ware loads or loads authorized by Ware. As such, his dealings with Ware did not amount to a separate calling or independent business for which he would expect to carry accident insurance. In addition, Gaston provided continuous service to Ware. He did not make independent contracts with other companies or with Ware for each load he carried. Gaston's job with Ware did not require separate contracts for each load hauled but amounted to continuous service under various operating agreements for fourteen years. In fact, the work Gaston did for Ware did not differ from the work the company's regular employees did. "Thus, that the work activity is of a kind necessary in the operation of the business so that if not done by the claimant would be done by a direct employee of the business, essentially establishes the renderer of the service an employee within the purposes of the compensation law." *Ceradsky,* 583 S.W.2d at 198.

The conclusion of law approved by the commission that Gaston was an independent contractor, did not consider whether Gaston operated his truck as an independent enterprise, how much skill truck driving requires and whether Gaston provided continuous service for a long period of time. The decision emphasized the contractual designation of Gaston as an independent contractor. The decision stated, "public policy recognizes the interest of the public in protecting the freedom of persons to contract and in enforcing contractual rights and obligations." citing *Willman v. Beheler*, 499 S.W.2d 770 (Mo.1973). The Commission decided to hold the parties to the agreement designating Gaston an independent contractor.

"... the evidence woefully fails to establish any valid reason for setting aside the contractual agreement between the parties which clearly and unquestionably created the relationship of carrier and independent contractor. The record in this case is fraught with evidence that the claimant exercised complete control if he was going to work, when he was going to work and where he would work ..."

The decision recognized that "while the contractual designation of the work status of a person is not to be brushed aside or ignored, it is not conclusive when there is evidence to overcome that designation." *Hirschbach*, 714 S.W.2d at 656. In Gaston's case, the actual conduct of the parties and other circumstances overcome the contractual designation. *See Hinton v. Bohling*, 796 S.W.2d 87, 89 (Mo.App.1990). Although he could decline loads, the company controlled when Gaston had to pick up and deliver the loads he accepted. In addition, Gaston had worked continuously for fourteen years for Ware only in accordance with the operator's agreement. Under the "relative nature of the work" test, these factors overcome the contractual designation.

The Commission also found it significant that Gaston owned his own truck, paid for his own maintenance on the truck, declined loads and kept only records required by the Federal Department of Transportation.

However, a Southern District case with facts similar to those in Gaston's case, reversed the Commission's finding the claimant worked as an independent contractor and held she worked as an employee. In the case, *Hirschbach*, the court had to decide the employment status of an over-the-road truck driver so the court could classify the relationship to the company of a person hired by the truck driver. *Hirschbach*, 714 S.W.2d at 654. In *Hirschbach*, the truck driver owned his truck, paid for his own maintenance, received payment by the trip, declined loads, designated the driver as an independent contractor in the contractual agreement, required 30 days notice to terminate the agreement, hired drivers the company approved, kept a tank full of gas as required by the company, called in regularly when carrying a load and carried only the company's loads. *Id.* at 656–59. The court classified the truck driver as an employee using an analysis different than that used by this court in the case at bar. *Id.* at 659. In *Hirschbach*, the court considered the factors listed above enough to demonstrate the company had the right to exercise control over the truck driver, consequently, the court considered the driver an employee. *Id.*

In addition to *Hirschbach*, another Missouri case considered some of the factors similar to those in Gaston. For example, in *Shinuald v. Mound City Yellow Cab Co.*, 666 S.W.2d 846, 849 (Mo.App.1984), the Eastern District followed the "relative nature of the work" test and held a cab driver an employee even though the cab drivers could start and stop work when they chose, could choose not to work at all and could refuse calls. The cab company argued those factors made the cab drivers independent contractors. The court disagreed and held "the claimant's work was a regular and continuous part of [the] business and not an independent business through which it would be feasible to channel the cost of work-connected injury." *Id.* at 849.

The case at bar presents a similar situation. Although Gaston could decline loads, this factor alone is not decisive of the employment relationship. The Commission

should have considered the duration of the employment and the true nature of the relationship. Gaston's work for Ware did not amount to an independent business. Ware essentially controlled what Gaston hauled, where he picked it up, when he picked it up and what time he had to deliver the load. Although Gaston owned his own truck,

"a workman who furnishes himself and the necessary equipment sells not only personal service but the use of the equipment as well and when ... the equipment is used by the worker in a continuous service integral to the business, a factual inference of employment arises."

*Hirschbach,* 714 S.W.2d at 657[8], quoting *Ceradsky,* 583 S.W.2d at 200.

The purpose of workers' compensation law also supports finding Gaston an employee. Gaston hauled loads for Ware only as part of their contract. He could not pass the cost of insurance to his customers because he worked for Ware only. In accordance with the public policy, society could not expect Gaston to bear the burden of risk of injury on the job.

Although the respondent cites cases from other jurisdictions, this court declines to follow them. Under the "relative nature of the work" test, this court concludes as a matter of law, Gaston was an employee of Ware for workers' compensation purposes.

## II.

■ Further, when Gaston changed the batteries on the truck he was in the course and scope of his employment. "In the course of" generally means "within a period of employment and at a place the employee may reasonably be while engaged in the furtherance of the employer's business or some activity incident thereto." *Zahn v. Assoc. Dry Goods,* 655 S.W.2d 769, 772 (Mo.App.1983). Under the mutual benefit doctrine, an employee is within the scope and course of his employment if the employee suffers an injury while performing an act for the mutual benefit of the employer and the employee. *Brenneisen v. Leach's Standard Service,* 806 S.W.2d 443, 448 (Mo.App.1991). Gaston changed the battery during a trip for Ware, during a period of employment. Because the contract with Ware made Gaston responsible for his own repairs, changing the battery in his own drive was a reasonable place to do so. Gaston benefitted from using a cheaper battery and doing the work himself and Ware benefitted because the truck was in good repair so he could timely complete the trip.

■ In addition, the agreement makes Gaston responsible for all repairs. When the employee makes needed repairs to the truck during a trip, injuries are in the course of the employment.

## III.

■ Further, Gaston's torn aorta arose out of the course of employment. This term is defined as relating to injuries if they are a "natural and reasonable incident" of the employment. *McClain v. Welsh Co.,* 748 S.W.2d 720, 721 (Mo.App. 1988). So long as an injury is job related, the claimant has suffered a compensable injury. *Wynn v. Navajo Freight Lines, Inc.,* 654 S.W.2d 87, 89 (Mo. banc 1983). Three doctors, including a doctor hired by J.H. Ware, attributed the lifting of the batteries to Gaston's torn aorta. Gaston suffered an injury arising out of the course of employment.

This cause is reversed and remanded to the Commission for a hearing regarding the extent and liability therefor of Gaston's disability.