**STATE of Missouri, Respondent,**

v.

**Richard TURNER, d/b/a B.T.'S Lounge, Appellant,**

No. WD 52942.

Missouri Court of Appeals, Western District.

Sept. 23, 1997.

Grant W. Smith, Linn, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Richard Turner appeals from his misdemeanor conviction of failing to insure his workers' compensation obligation under §§ 287.280.1 and 287.128.5, RSMo 1994.[1] The trial court sentenced Mr. Turner to sixty days in jail, suspended execution of that sentence and placed him on two years unsupervised probation. As a condition of probation, the trial court ordered Mr. Turner to pay $10,433.43 in restitution. Mr. Turner contends that the trial court erred in convicting him because the State did not establish that he was an employer under § 287.030, since there was insufficient evidence that he employed five or more employees during the relevant time period of September 15 through September 30, 1994.

The judgment of the trial court is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

On appeal from a criminal conviction, this court reviews the facts in a light most favorable to the verdict. *State v. Storey*, 901 S.W.2d 886, 891 (Mo. banc 1995). The facts are as follows. Mr. Turner owned and operated a bar in Jefferson City, Missouri called B.T.'s Lounge. On September 17, 1994, Millie Nold, who was employed by Mr. Turner as a waitress and bartender at B.T.'s Lounge, injured herself while working. As Ms. Nold went to a music booth to play music for the bar's patrons, she "turned one ankle and fell out on the floor." After being taken to the hospital, Ms. Nold received treatment for a broken ankle and a dislocated foot. As a result of her injury, Ms. Nold incurred medical bills totaling $10,433.43.

Ms. Nold requested Mr. Turner to pay her medical bills but he refused, claiming that he was not obligated. Subsequently, Ms. Nold filed a complaint with the Division of Workers' Compensation Fraud and Noncompliance Unit, alleging that Mr. Turner failed to properly insure his workers' compensation liability. Mr. Turner was charged by an amended information with one count of failing to insure his workers' compensation liability for the period of September 15 to September 30, 1994, as required by § 287.280.1. The offense was charged as a class A misdemeanor pursuant to § 287.128.5.

At trial on this charge, the State presented four witnesses and numerous exhibits. Lawrence Liep, an attorney with the Missouri Division of Workers' Compensation, explained how the Division kept records of employers and whether they maintained workers' compensation insurance. Mr. Liep testified that the Division's records showed that Mr. Turner did not have insurance for his employees for the time period of July 15, 1994 through January 31, 1995. These records were admitted into evidence. Rebecca Mankin, an investigator with the Division of Workers' Compensation Fraud and Noncompliance Unit, testified as well. She testified that Mr. Turner was not self-insured and did not possess workers' compensation insurance for the employees of B.T.'s Lounge.

The State also called Ms. Nold as a witness. Ms. Nold testified that she worked for Mr. Turner during September of 1994 as a waitress and bartender at B.T.'s Lounge and that she received a paycheck every two weeks. She testified that several other individuals worked there during that period. Two of her "bosses," Ken Brown and Roy Chism, tended bar and acted as bouncers. She also identified Brenda Houston, another bartender; Karen Wright and Tanya Goldman, waitresses; and Dan Turner, Rick Black, and an individual named "Lionel," disc jockeys, as individuals who worked at B.T.'s Lounge in September of 1994.

As its next witness, the State called Ms. Houston, who testified that she bartended

---

1. All statutory references are to the Revised Statutes of Missouri, 1994.

and waited tables at B.T.'s Lounge. Ms. Houston stated that Mr. Brown and Mr. Chism helped at the bar if it was particularly crowded and acted as bouncers at the front door. Ms. Houston concurred in Ms. Nold's testimony that both she and Ms. Nold worked for Mr. Turner and that Ms. Wright and Ms. Goldman also worked as waitresses. Ms. Houston believed that there were at least two disc jockeys who worked regularly at the bar on different nights of the week.

Mr. Turner took the stand in his defense and testified that Ms. Nold, Ms. Houston, Ms. Wright and Ms. Goldberg were his employees at B.T.'s Lounge. Mr. Turner also testified that he never had more than four employees at any one time but that he may have had more than four employees during any specific quarter. When questioned about the disc jockeys, Mr. Turner agreed that three individuals served as disc jockeys, but said that they were not his employees but were merely trying to help "and keep the place open." Mr. Turner further testified that Mr. Brown and Mr. Chism were not his employees, but his partners, even though on the certificate of corporate records, Mr. Turner named himself as the sole proprietor of the bar.

On cross-examination, Mr. Turner admitted that the disc jockeys worked regularly at the bar and that he sometimes paid them in cash, with the exception of Mr. Black. Mr. Turner said that the disc jockeys helped bring people in and that if he had the choice of having them or not, he would choose to have them. He also testified that he intended to keep the number of employees below five so he would not have to maintain workers' compensation insurance. In addition, Mr. Turner admitted that Mr. Chism and his wife cleaned up the bar after hours but said that he did not pay Mr. Chism and was unsure whether Mr. Chism paid his wife.

After taking the matter under advisement and allowing the parties to file memoranda, the trial court found Mr. Turner guilty. The court sentenced him to a suspended sixty-day sentence, suspended execution of that sentence and placed Mr. Turner on two years probation. A condition of his probation was that he pay $10,433.43 in restitution to Ms. Nold. Mr. Turner filed a timely appeal of this order in this court.

## POINT ON APPEAL

As his only point on appeal, Mr. Turner contests the sufficiency of the evidence to support his conviction. Mr. Turner contends that the trial court erred in convicting him because the State did not meet its burden of proving he was an employer under § 287.030 who was required to insure his workers' compensation obligation under § 287.280.1. Specifically, Mr. Turner charges that there was insufficient evidence to prove that he had five or more employees during the relevant time period.

## STANDARD OF REVIEW

On appellate review of a court-tried criminal case, this court applies the same standard of review as in a jury-tried case. *State v. Rehberg*, 919 S.W.2d 543, 552 (Mo. App.1995). In determining whether sufficient evidence supports the verdict, this court does not weigh the evidence or determine the credibility of witnesses, but simply determines whether substantial evidence exists from which the court might have found the defendant guilty beyond a reasonable doubt. *Id.* Substantial evidence consists of evidence "from which the trier of fact could reasonably find the issue in harmony with the verdict." *State v. Gordon*, 915 S.W.2d 393, 396 (Mo. App.1996) (quoting *State v. Gomez*, 863 S.W.2d 652, 655 (Mo.App.1993)). Under this standard, this court finds that there is sufficient evidence to support the trial court's finding that Mr. Turner was guilty beyond a reasonable doubt.

## LEGAL ANALYSIS

Under § 287.030.1(1), any person "using the service of another for pay" is an "employer." To be subject to the workers' compensation laws, however, the employer must have "five or more employees." Section 287.030.1(3). "Every employer subject to the provisions of this chapter shall, on either an individual or group basis, insure [the employer's] entire liability thereunder ... with some insurance carrier authorized to insure such liability in this state...." Section

287.280.1. An employer who fails to insure the employer's liability for workers' compensation is guilty of a class A misdemeanor. Section 287.128.5.

Mr. Turner admits that he is an employer under the definition of § 287.030.1(1) because he uses the services of others for pay. However, he contends that he is not subject to the mandatory workers' compensation provisions under § 287.030.1(3) because he does not employ five or more employees.

"Employee" is defined in § 287.020.1 as a "person in the service of any employer ... under any contract of hire, express or implied, oral or written...." In determining whether an individual is an "employee" for purposes of the workers' compensation statutes, this court's inquiry focuses on whether the "employer had 'the right to control the means and manner of the service, as distinguished from controlling the ultimate results of the service.'" *Dawson v. Home Interiors & Gifts, Inc.*, 890 S.W.2d 747, 748 (Mo.App. 1995) (quoting *Hutchison v. St. Louis Altenheim*, 858 S.W.2d 304, 305 (Mo.App.1993)) (citations omitted). The right to control is the key factor in determining whether an employer-employee relationship exists. *Dawson*, 890 S.W.2d at 748.

### EMPLOYER-EMPLOYEE RELATIONSHIP TEST

██ Whether an employer-employee relationship exists is a question that "must be determined on the peculiar facts of each case...." *Dawson*, 890 S.W.2d at 748. However, several factors must be considered in deciding whether a right to control exists. These are: "(1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the alleged employer, and (8) the employment contract." *Id.* No one factor in the analysis is dispositive, but each must be considered as relevant in making the determination of whether an employer-employee relationship exists. *Id.*

In this case, the question is which of the numerous individuals who perform services at B.T.'s Lounge qualify as "employees" for purposes of the workers' compensation statutes under this test. Clearly, Ms. Nold, Ms. Houston, Ms. Wright and Ms. Goldman were employed as waitresses and bartenders by Mr. Turner at B.T.'s Lounge. Mr. Turner admitted that he employed these individuals during September of 1994.

If one or more of the other persons who provided services at B.T.'s Lounge is determined to be an employee, then Mr. Turner would have five or more employees and, under § 287.030.1(3), would be subject to the mandatory provisions of the workers' compensation laws. With regard to the other possible employees, there is more evidence in the record concerning two of the disc jockeys than Mr. Turner's "partners" or Mr. Chism's wife who cleaned the bar. Therefore, this court first applies the employer-employee relationship test to Dan Turner and Lionel, who worked as paid disc jockeys, in order to determine whether Mr. Turner had five or more employees.

### Extent and Exercise of Control

The factors of "extent of control" and the "actual exercise of control" do not aid in determining whether there is an employer-employee relationship in this case. The State did not elicit testimony from any witness concerning whether Mr. Turner had the right to control the manner in which the disc jockeys performed, such as what music the disc jockeys played or when they played it. Nor is there evidence that Mr. Turner actually exercised control over the disc jockeys as is required by the second element of the test.

### Duration of Employment

There is evidence in the record that between the dates of September 15, 1994 and September 30, 1994, Dan Turner and Lionel worked at B.T.'s Lounge on a very regular schedule. Dan Turner came in every Wednesday night while Lionel worked on Thursday, Friday and Saturday nights. The fact that the disc jockeys worked regular schedules on a continuing basis at the lounge

bodes in favor of an employer-employee relationship.

### Right to Discharge

There is no evidence in the record as to whether Mr. Turner had the right to discharge the disc jockeys without incurring breach of contract liability.

### Method of Payment

Mr. Turner testified that he paid both Dan Turner and Lionel with cash. However, there was no evidence concerning how much he paid them or how frequently he paid the disc jockeys. Nor was there evidence as to whether Mr. Turner paid them by the hour, by the job or if he paid a set salary. While the payment of wages alone does not indicate an employer-employee relationship, it is relevant to the analysis. *Hutchison,* 858 S.W.2d at 306.

### Degree to Which Alleged Employer Furnished Equipment

There is no direct evidence in the record concerning who furnished the disc jockey's equipment. However, there is a reasonable inference from Ms. Nold's testimony that Mr. Turner furnished the equipment. Ms. Nold testified that she injured herself when she was walking up to the disc jockey booth to "put the music on." When she fell she was the sole employee in the lounge. Ms. Nold went to a disc jockey booth to play music because the two disc jockeys on duty that night did not come in until later. From this evidence, the trial court could have reasonably inferred that Mr. Turner furnished the disc jockeys with their equipment. "When it is the employer who furnishes the equipment, the inference of right of control is a matter of common sense and business." *Hinton v. Bohling Van & Storage Co.,* 796 S.W.2d 87, 90 (Mo.App.1990) (quoting ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 44.34(b) (1990)). The fact that Mr. Turner furnished the equipment weighs in favor of an employer-employee relationship.

### Extent to Which Work Is Regular Work of Alleged Employer

This factor also weighs in favor of an employer-employee relationship because the disc jockeys played music in B.T.'s Lounge four nights a week. Mr. Turner testified at trial that the disc jockeys helped bring people in and that they "would just help just to try and keep the place open." This is evidence that the disc jockeys were a part of the regular business of B.T.'s Lounge.

### Employment Contract

The final factor of the test considers whether an employment contract designates the status of an individual. Here, there is no evidence of an employment contract in the record.

Under the employer-employee test, this court concludes that the evidence is inconclusive as to whether the disc jockeys were Mr. Turner's employees. The facts that Mr. Turner provided the equipment, paid Dan Turner and Lionel for this work, and had them come in on a regular schedule to perform work in his normal course of business indicate an employer-employee relationship. But, there is no evidence concerning the extent of control or the actual exercise of control by Mr. Turner, whether Mr. Turner had the right to discharge the disc jockeys, the method of payment or the nature of the employment contracts. Considering this lack of evidence, particularly on the most important factors of extent of control and actual exercise of control, the employer-employee test is inconclusive. Therefore, this court must utilize a second test.

### RELATIVE NATURE OF THE WORK TEST

■ "When the factors of control do not clearly demonstrate the employer's actual or right to control, the 'relative nature of the work test' determines employment status." *Watkins v. Bi-State Development Agency,* 924 S.W.2d 18, 21 (Mo.App.1996). *See also Gaston v. J.H. Ware Trucking Inc.,* 849 S.W.2d 70, 74 (Mo.App.1993). Under this test, this court considers the relationship between the work and the business:

Where by the very nature of the work relationship or other circumstance ... control is not conspicuous, the right to direct the detail of the work becomes only one indicium of control among others and the inquiry turns to the economic and functional relationship between the nature of the work and the operation of the business served. The inquiry, moreover, tends away from technical common law definitions to the public purpose of the scheme for workmen's compensation.

*Gaston,* 849 S.W.2d at 74 (quoting *Ceradsky v. Mid–Am. Dairymen, Inc.,* 583 S.W.2d 193, 198–99 (Mo.App.1979)). "[T]he public policy of statutory employee provision is to prevent an enterprise, through the guise of agreements with independent contractors of doubtful fiscal responsibility, to evade workmen's compensation liability for injury to a worker performed in the usual and ordinary business enterprise work." *Ceradsky,* 583 S.W.2d at 198, n. 4.

■ The factors to consider under this test include the character of the alleged employee's work—that is how skilled it is, how much of a separate calling or enterprise it is, and to what extent it may be expected to carry its own accident burden. *Ceradsky,* 583 S.W.2d at 199. In addition, this court considers the relation of the job to the employer's business, focusing on whether the job is continuous or intermittent and whether the duration of the employment amounts to "the hiring of continuing services as distinguished from contracting for the completion of a particular job." *Gaston,* 849 S.W.2d at 74.

### Character of the Alleged Employee's Work

■ Under this portion of the "relative nature of the work test," this court considers the character of the disc jockey's jobs. The skill level of a disc jockey could range from unskilled to very skilled. As to the extent the job is a separate calling or enterprise, this court notes that a disc jockey position can lend itself to contracting out for specific jobs but this is not always the case. These factors do not aid our analysis since there is no evidence in the record indicating how

skilled or unskilled Dan Turner or Lionel were or whether they ran their own businesses or worked exclusively for Mr. Turner. Finally, the nature of a disc jockey's work does not make it likely that a disc jockey would be expected to carry his or her own accident burden. This fact weighs somewhat in favor of an employer-employee relationship.

### Relation to The Alleged Employer's Business

This portion of the test directs our attention to the relationship between the job and the business. First, the disc jockeys' jobs were continuous rather than intermittent. There was evidence that Dan Turner came in every Wednesday night and that Lionel worked on Thursday, Friday and Saturday nights. Although the nature of a disc jockey's job may lend itself to contracting out for specific jobs, in this case the disc jockeys worked on a regular schedule and Mr. Turner hired their services on a continuing basis. Second, the evidence supports the finding that Lionel and Dan Turner were a part of the regular business of B.T.'s Lounge. The disc jockeys helped keep the business open and drew in customers. The nature of the work was such that, if it had not been done by Dan Turner and Lionel, another employee would have done it. Here, Ms. Nold was doing exactly this when she was injured. This factor weighs in favor of an employer-employee relationship.

### CONCLUSION

Under the "relative nature of the work test," the evidence supports a finding that the work of the disc jockey's "was a regular and continuous part of that business and not an independent business through which it would be feasible to channel the cost of work-connected injury." *Shinuald v. Mound City Yellow Cab Co.,* 666 S.W.2d 846, 849 (Mo. App.1984). Therefore, this court determines that there was sufficient evidence that the two disc jockeys were Mr. Turner's employees for workers' compensation purposes during the relevant time period. In addition to these two employees, Mr. Turner employed the four waitresses and bartenders as previ-

ously discussed. Because we conclude that the evidence supports a finding that Mr. Turner employed five or more individuals, we need not consider whether Mr. Turner's "partners" or Mr. Chism's wife, who cleaned the bar, should be deemed employees.

Mr. Turner argues that although he may have had five or more employees, they did not all work for him at the same time. Section 287.020.6 requires a person to be employed for more than five and a half consecutive work days in order to be considered an "employee" for purposes of the workers' compensation statutes. "An employee need not actually work more than [five and a half] consecutive days but need only be in the employer's employment for that length of time." *Metcalf v. Castle Studios*, 946 S.W.2d 282, 285 (Mo.App.1997). In enacting this requirement, the General Assembly intended to exclude temporary employees, "those who were employed for only five days or less, terminated, and then rehired at a later time for another five days or less," from coverage under the Act. *Id.*

In this case, there is evidence that Ms. Nold, Ms. Houston, Ms. Wright, Ms. Goldman, Dan Turner and Lionel were all employed by Mr. Turner at B.T.'s Lounge during the entire period of September 15, 1994 to September 30, 1994. Although many of these employees may have been part-time and may have not worked simultaneously, it is not full-time or part-time status that determines employment under the workers' compensation statutes. *See id.* Instead, the key is whether each employee was employed for more than five and a half consecutive days. *Id.* Here, there is sufficient evidence that these six individuals were employed by Mr. Turner for a period of fifteen consecutive days. As a result, § 287.280.1 required Mr. Turner to insure his workers' compensation obligation.

Therefore, from the evidence in the record, the trial court could have concluded beyond a reasonable doubt that Mr. Turner employed five or more people during the time period of September 15, 1994 through September 30,

1994. The judgment of the trial court is affirmed.

All concur.