Amy S. METCALF, Respondent,

v.

CASTLE STUDIOS, Appellant.

No. WD 53520.

Missouri Court of Appeals, Western District.

June 10, 1997.

Clifford Mayberrey, Kirksville, for Appellant.

David Masters, Macon, for Respondent.

SPINDEN, Judge.

Castle Studios appeals the Labor and Industrial Relations Commission's award of workers' compensation benefits to Amy S. Metcalf. It contends that the commission erred in awarding benefits to Metcalf because it was not subject to the workers' compensation laws and because competent and substantial evidence did not support the award. We affirm.

Castle Studios' owner, Nancy Mihalevich, hired Metcalf in September 1987 to work as a hairdresser. On March 14, 1992, Metcalf injured her left arm and wrist. Metcalf filed a claim for workers' compensation benefits asserting that she injured her arm through overuse. On March 14, 1992, Castle Studios employed six or seven persons.

On April 24, 1996, the Division of Workers' Compensation's legal advisor [1] determined that Castle Studios was not exempted from the workers' compensation laws because it employed more than five employees at the time of Metcalf's injury. He also held that Metcalf was entitled to $11,638.19 for medical aid, temporary total disability, temporary partial disability, mileage, and permanent partial disability. Castle Studios appealed that decision to the Labor and Industrial Relations Commission. The commission affirmed the award of the legal advisor, and Castle Studios appeals.

■ Before we address Castle Studios' points on appeal, we feel compelled to address *sua sponte* the adequacy of the commission's decision. In affirming the legal advisor's award, the commission said:

Having reviewed the evidence and considered the whole record, the Commission finds that the award of the administrative law judge is supported by competent and substantial evidence and was made in accordance with the Missouri Workers' Compensation Act. Pursuant to § 286.090 RSMo, the Commission affirms the award of the administrative law judge dated April 24, 1996.

Section 286.090, RSMo Supp.1996, provides:

In every appeal coming before the commission from any of the divisions of the department, the commission shall prepare and file a written statement giving the commission's findings of fact and conclusions of law on the matters in issue in such appeal together with the reasons for the commission's decision in the appeal; except that a decision of a division of the department meeting the requirements of this section may be affirmed or adopted without such written statement.

This section requires the commission to make findings of fact and conclusions of law or to affirm or adopt the division's decision—in our case the legal advisor's decision. The com-

mission, however, affirmed the legal advisor's *award*—not the legal advisor's *decision*.

The commission attached to its decision a document entitled "Award on Hearing" signed by the legal advisor and the legal advisor's findings of fact and rulings of law. Nowhere in the commission's order did the commission affirm or adopt the legal advisor's decision—that is, his findings of fact and conclusions of law.

The affirmance of the legal advisor's award does not include the findings of fact and conclusions of law. This is made evident by § 287.495.1, RSMo 1994. That section provides:

The final award of the commission shall be conclusive and binding unless either party to the dispute shall, within thirty days from the date of the final award, appeal the award to the appellate court having jurisdiction in the area in which the accident occurred or, if the accident occurred outside of this state, then in the area where the contract of employment was made. Such appeal may be taken by filing notice of appeal with the commission, whereupon the commission shall, under its certificate, return to the court all documents and papers on file in the matter, together with a transcript of the evidence, *the findings and award*, which shall thereupon become the record of the cause. Upon appeal no additional evidence shall be heard and, in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding.[2]

The General Assembly obviously distinguished between findings and award. Section 287.460.1, RSMo 1994, also indicates that the General Assembly did not intend for "findings" and "award" to be synonymous. That section requires:

The division, through an administrative law judge, shall hear in a summary proceeding the parties at issue and their representatives and witnesses and shall determine the dispute. All evidence introduced

---

1. Section 287.616.2, RSMo 1994, provides, "Legal advisors shall also act in the capacity of associate administrative law judges in those offices having only one administrative law judge

and shall have jurisdiction to hear and determine claims upon original hearing."

2. We added the emphasis.

at any such hearings shall be reported by a competent reporter appointed by the division or be recorded by electronic means. *The award, together with a statement of the findings of fact, rulings of law* and any other matters pertinent to the question at issue, shall be filed with the record of proceedings, and a copy of the award shall immediately be sent by United States mail to the parties in dispute and the employer's insurer.[3]

■ We recognize that this conclusion may be viewed as technical, but the commission, as an administrative tribunal, is a creature of statute and exercises only that authority given to it by the legislature. *Martin v. Inland Truck Parts,* 935 S.W.2d 68, 71 (Mo.App.1996).

■ What saves the commission's decision in this case is that the legal advisor's award said, "ATTACHED HERETO ARE THE FINDINGS OF FACT AND RULINGS OF LAW MADE IN CONNECTION HEREWITH." So, in this instance, we conclude that the award included the legal advisor's findings of fact and conclusions of law. In future cases, however, the commission should affirm or would be well advised to revise its decisions to adopt the administrative law judge's decision—the findings of fact and conclusions of law—as required by § 286.090.

In Castle Studios' first point on appeal, it asserts that it was not an employer subject to the workers' compensation laws; therefore, the commission erred in awarding benefits to Metcalf. In particular, Castle Studios contends that it did not have five or more employees working for 5½ consecutive work days as required by §§ 287.030.1(3) and 287.020.6, RSMo 1994.

Section 287.030.1(3) requires employers to have "five or more employees to be deemed an employer" for the purposes of workers' compensation coverage. Section 287.020.6 provides, "A person who is employed by the same employer for more than five and one-half consecutive work days shall for the purpose of this chapter be considered an 'employee.' "

Castle Studios does not contest that it had five or more employees, but it asserts that § 287.020.6 required those five or more employees to *work* for 5½ consecutive days. It contends that if it had five or more employees employed at different times and not concurrently it would not qualify as an employer.

■ Section 287.020.6 requires a person to be employed—not working—for more than 5½ consecutive work days. An employee need not actually work more than 5½ consecutive days but need only be in the employer's employment for that length of time. To conclude otherwise would render persons working five days a week, eight hours a day, not covered by the Workers' Compensation Act. This would mean that an employer whose business was open seven days a week, but who required his employees to work five days for 40 hours a week, would be exempt even if the employer employed more than 1000 employees. This simply was not the legislature's intent. The General Assembly apparently intended the requirement that an employee must be employed for at least 5½ consecutive days to exclude temporary employees—those who were employed for only five days or less, terminated, and then rehired at a later time for another five days or less.

Castle Studios relies on *Crevisour v. Hendrix,* 234 Mo.App. 1012, 136 S.W.2d 404, 410 (1939), for the proposition that an employer is not brought within the act if he or she, at different times, and not concurrently, employs more than five different employees scattered through the period of employment. The *Crevisour* court dealt with predecessor statutes to §§ 287.030.1 and 287.020.6. Section 3302, RSMo 1929, said:

(a) A major employer shall mean an employer who has more than ten employees regularly employed.

(b) A minor employer shall mean an employer who has ten or less employees regularly employed.

Section 3305(d), RSMo 1929, said, "An employee who is employed by the same employer for more than five and one-half consecu-

---

3. We added the emphasis.

tive work days shall for the purpose of this chapter be considered a regular and not a casual employee." The *Crevisour* court reconciled the two statutes and said:

> If the employer in the instant case had more than ten regular employes, as defined by the statute, employed for as much as five and one-half consecutive work days, at any time during [a reasonable] period, then he was a major employer within the meaning of the act. If he did not have more than ten regular employes so employed for that period of time, then he was not a major employer, but a minor one. That is so even though he did have more than ten regular employes employed for less than five and one-half consecutive work days.

*Id.* at 408. Contrary to Castle Studios' assertion, *Crevisour* did not require the employees to work for 5½ days, but only be *employed* for 5½ days. In fact, the *Crevisour* court noted that an employee whose employment was not limited to less than 5½ consecutive days and who was injured on the first day that he worked would still be entitled to workers' compensation benefits. *Id.* at 411.

Moreover, in *Fowler v. Baalmann, Inc.*, 361 Mo. 204, 234 S.W.2d 11, 14 (1950), the Supreme Court questioned the reasoning of the *Crevisour* court that an employer is not brought within the act if he or she at different times and not concurrently, employs more than ten different employees scattered through the period of employment. The *Fowler* court noted that the *Crevisour* court overlooked the definition of employee which included "every person in the service of the employer." The court said:

> [T]he test of whether an employer is a "major" or a "minor" employer is not that he shall employ more than ten employees who must have worked more than five and one-half days consecutively but "who has more than ten employees regularly employed." ... ["]The word, 'regularly,' is not synonymous with constantly or continuously employed." ... "The law (Section 3695(a)) does not provide that one may not be a regular employee unless he has been actually engaged in the work for more than five and one-half consecutive work

days before the accident, but that, where one is employed, i.e., hired for a work contemplating, and is actually engaged for, more than five and one-half consecutive days, he must be considered a regular employee."

*Id.* at 14–15 (emphasis omitted) (citations omitted).

Although the statutes no longer make a distinction between a major and minor employer, the rationales of the *Crevisour* and *Fowler* cases still apply. To be considered an employer, Castle Studios had to employ five or more persons for more than 5½ consecutive work days. The evidence established that Castle Studios employed at least five persons in the hair salon for more than 5½ consecutive work days; therefore, it is subject to the workers' compensation laws.

In its second point, Castle Studios contends that the commission erred in making its award of compensation to Metcalf because competent evidence did not support the award. In particular, it asserts that Metcalf did not establish that she suffered any temporary total disability or a permanent partial disability and she did not show that her medical bills were necessary or fair and reasonable. We disagree.

■ The commission awarded Metcalf temporary total disability benefits for March 14, 1992, to April 12, 1992, and for June 4, 1992, to June 26, 1992. Castle Studios contends that because Metcalf's doctor's report of April 2, 1992, and June 4, 1992, did not mention work restrictions, Metcalf is not entitled to temporary total disability benefits.

■ Temporary partial disability is to be awarded during the healing period to compensate the employee for the reduction in his or her working ability during the healing period. It is to be granted only for the time prior to when the employee can return to work. *Herring v. Yellow Freight System, Inc.*, 914 S.W.2d 816, 820 (Mo.App.1995). Thus, to support an award for temporary total disability, the evidence must show that Metcalf was unable to return to any reasonable employment during her healing period.

Metcalf testified about the pain she was feeling in her left wrist and palm, the swell-

ing of her fingers, the inability to grasp and hold onto objects, and her inability to lift anything of significant weight with her left arm. She said that the pain had progressed to the point that it was bothering her day and night.

Metcalf went to see a physician on March 14, 1992, and he gave her pain medication and ordered her to wear a wrist brace. Metcalf said that she was unable to work while wearing the brace, so she would take the brace off while working. On April 2, 1992, Metcalf went to see an orthopaedic specialist, Michael J. Lyons, and he put a cast on her left arm to keep it immobile. Metcalf testified that she was unable to work while the cast was on her arm because it was physically impossible to cut hair. She also said that Lyons told her not to work. She returned to work on April 14, 1992, after the cast was removed, but she said Lyons told her to work only three to four hours a day. Lyons' report of April 13, 1992, said, "I believe the patient could start to return to work part-time 3 days a week for the next 2–3 weeks."

On June 2, 1992, she returned to see Lyons because her symptoms and pain had increased. Lyons again put a cast on her arm. He removed the cast on June 26, 1992, and told Metcalf she could return to work for three to four hours per day. Lyons' report for June 26, 1992, said, "[Metcalf] will return to work on a progressive basis as tolerated with follow up as needed." Metcalf did not return to full duty until August 24, 1992.

This evidence supported the commission's award of temporary total disability. Contrary to Castle Studios' contention, the reports of Metcalf's doctor did mention work restrictions.

■ As to the award of permanent partial disability benefits, Castle Studios contends that no credible evidence supports the commission's decision that Metcalf had a 20 percent permanent partial disability rating. We disagree.

Castle Studios fails to mention the report from Dr. Jerome F. Levy who saw Metcalf on July 12, 1995. Levy concluded, "In my opinion, this patient has the following permanent partial disability ... [a]s a result of the accident of the work related trauma carried out for a number of years prior to early 1991 ... twenty percent (20%) of the left upper extremity at the wrist." Based upon Levy's examination of Metcalf and Metcalf's testimony about the problems she suffered, the commission had substantial and competent evidence to support its award of permanent partial disability benefits.

■ Castle Studios also complains that Metcalf did not establish that her medical bills were necessary or fair and reasonable as required by § 287.140.3, RSMo 1994. That section requires a showing that compensable medical charges be "fair and reasonable."

Metcalf testified as to the treatment she received and introduced her medical bills relating to her injury into evidence. Castle Studios made no showing that these bills were not fair and reasonable. As the Supreme Court said, in *Martin v. Mid-America Farm Lines, Inc.*, 769 S.W.2d 105, 111–12 (Mo. banc 1989): [4]

> [The employee] testified that her visits to the hospital and various doctors were the product of her fall. She further stated that the bills she received were the result of those visits. We believe that when such testimony accompanies the bills, which the employee identifies as being related to and the product of her injury, and when the bills relate to the professional services rendered as shown by the medical records in evidence, a sufficient factual basis exists for the commission to award compensation. The employer, of course, may challenge the reasonableness or fairness of these bills or may show that the medical expenses incurred were not related to the injury in question.

Castle Studios made no attempt to challenge the reasonableness or fairness of Metcalf's medical bills; nor did it establish that the

4. This case was superseded in part by a change to § 287.160, RSMo, which concerned interest calculations in compensation cases. See Johnson v. St. John's Mercy Medical Center, 812

S.W.2d 845 (Mo.App.1991). This statutory change did not effect the Martin decision in regard to the reasonableness and fairness of medical bills.

medical bills were not related to Metcalf's injury. Its point is denied.

We find that substantial and competent evidence supported the commission's award of $11,638.19 for medical aid, temporary total disability, temporary partial disability, mileage, and permanent partial disability.

BERREY, P.J., and SMART, J., concur.