Carroll E. MAAS, Claimant/Appellant,

v.

**TREASURER OF THE STATE OF MISSOURI as Custodian of the Second Injury Fund, Additional Party/Respondent.**

No. 72598.

Missouri Court of Appeals, Eastern District, Division Two.

March 10, 1998.

Harry J. Nichols, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Woodie J. Curtis, Jr., Asst. Atty. Gen., St. Louis, for respondent.

CRANE, Presiding Judge.

Carroll Maas (claimant) appeals from an award of the Labor and Industrial Relations Commission (Commission) denying him relief from the Second Injury Fund for injuries he sustained on September 5, 1991 from falling down a flight of stairs while on a business trip in Portland, Maine. Claimant claims the Commission did not properly affirm or adopt the Administrative Law Judge's (ALJ) decision and therefore failed to make findings of fact and conclusions of law. Claimant also challenges the sufficiency of the facts to support the Commission's finding that his injury on September 5, 1991 was the sole cause of his permanent total disability. We affirm.

*Factual Background*

Claimant was employed by National Industries for the Blind. On or about September 5, 1991, while at a meeting arranged by his employer in Portland, Maine, claimant, who was then 61 years old, fell down a flight of 15 stairs. As a result of his fall, claimant was taken to Maine Trauma Hospital where he had surgery on the back of his neck and on the front of his neck. He was diagnosed with a central spinal cord injury and a closed head injury. He underwent a total cervical laminectomy on September 16, 1991 and an anterior cervical diskectomy, partial corpectomy, casper plating and screwing of C5–6, and placement of Gardner–Wells tongs on September 23, 1991. Claimant was unable to walk, control his bowels, or move his left hand. He stayed at the Maine Trauma Hospital over six weeks.

On October 21, 1991 claimant was flown to St. Louis and immediately admitted to St. John's Mercy Medical Center where he remained until January, 1992. Dr. Barbara Green diagnosed him on admission with quadriparesis. While at St. John's, he underwent physical and occupational therapy but had no further surgery. By January, 1992 claimant regained some of the function in his left hand and could walk 200 feet with a left knee drop-block extension brace, a walker, and standby assistance.

On August 7, 1992 claimant underwent a total left knee replacement at DePaul Health Center. Claimant was again admitted to DePaul Health Center on August 18, 1992 to determine his candidacy for rehabilitation. On August 20, 1992 claimant was admitted to St. John's Mercy Medical Center for comprehensive rehabilitation. When he was discharged on September 2, 1992, he was able to walk 200 feet with a walker and 100 feet with a cane.

Claimant saw Dr. Green on July 27 and September 29, 1993 and complained of his physical limitations and inability to do simple daily activities. Claimant underwent a total left shoulder replacement and repair of the left rotator cuff by Dr. Martin on October 21, 1993 due to marked degenerative disease. Dr. Martin's records showed that claimant's physical therapy was hampered due to his prior spinal cord injury. On November 1, 1993 claimant was again admitted to St. John's for comprehensive rehabilitation. Upon discharge on November 12, 1993, claimant could perform simple tasks such as facial hygiene but required assistance for feeding himself, walking 150 feet with a cane, dressing, and bathing. Claimant returned to Dr. Green on June 1, 1994 with the same complaints as before. Dr. Green believed

that claimant continued to have problems related to his spinal cord injury.

Claimant was evaluated on his own behalf by Dr. Raymond F. Cohen on April 2, 1992. Dr. Cohen found that claimant was permanently and totally disabled due to his significant spinal cord injury on September 5, 1991. On February 28, 1995 Dr. Cohen reevaluated claimant to address Second Injury Fund liability. Dr. Cohen was provided with claimant's medical history and concluded that claimant was permanently and totally disabled due to the combination of the primary work injury and his preexisting conditions.

Claimant's preexisting disabilities before the September 5, 1991 fall include the following: 1) in 1943 claimant fell as a child and suffered a compound fracture of his lower left leg; 2) in 1951, while playing football, he had his left knee knocked out of place; 3) in 1967 he was hospitalized for swelling of his joints; 4) in 1970 he was hospitalized for four days for bleeding ulcers; 5) in 1980 he underwent surgery to have two-thirds of his stomach removed; 6) in 1982 he had surgery on his back, was required to wear a brace, and developed numbness in his feet; 7) also in 1982 and again in 1990 he underwent surgery for a right hip replacement; and 8) in 1989 he underwent surgery for a left hip replacement and had been forced to use a cane and sometimes a walker thereafter.

*Procedural History*

On October 31, 1991 claimant filed a claim for workers' compensation and compensation from the Second Injury Fund alleging permanent total disability. Claimant alleged that he suffered from paralysis and severe trauma to the central spinal cord and head due to a fall down a flight of stairs while on duty at a business workshop. On December 22, 1992 claimant and his employer entered a lump sum settlement of $215,000.00 based upon a 75% permanent partial disability relative to claimant's head, neck, and nervous system resulting from the September 5, 1991 injury.

The issue of Second Injury Fund liability was tried before the ALJ on April 30 and May 2, 1996. The ALJ found claimant was permanently and totally disabled solely as a result of the primary injury on September 5, 1991, without regard to his preexisting conditions, and denied Second Injury Fund compensation. On November 5, 1996 claimant filed his application for review with the Commission. On May 1, 1997 the Commission issued its final award denying compensation from the Second Injury Fund.

*Discussion*

For his first point claimant contends that the Commission erred in failing to comply with Section 286.090 RSMo (1994) requiring the Commission to enter its own findings of fact and conclusions of law or adopt those of the ALJ. Claimant argues that the Commission's failure to affirm and adopt the ALJ's "decision" rather than the ALJ's "award" leaves this court with no findings of fact and conclusions of law on which to base its review.

In its Final Award Denying Compensation, the Commission stated:

Having reviewed the evidence and considered the whole record, the Commission finds that the **award** of the administrative law judge is supported by competent and substantial evidence and was made in accordance with the Missouri Workers' Compensation Act. Pursuant to [Section] 286.090 RSMo, the Commission affirms the **award** of the administrative law judge dated October 18, 1996, and awards no compensation in the above-captioned case.

The **award** of Administrative Law Judge John Howard Percy, issued October 18, 1996, is attached and incorporated by this reference. (Emphasis added).

Attached to the final award was the ALJ's Award dated October 18, 1996 and the ALJ's Findings of Fact and Rulings of Law dated October 18, 1996.

Section 286.090.1 RSMo (1994) provides:

In every appeal coming before it from any of the divisions of the department, the commission shall prepare and file a written statement giving its findings of fact and conclusions of law on the matters in issue in said appeal together with the reasons for its decision therein; except that a **decision** of a division of the department meet-

ing the requirements of this section may be affirmed or adopted without such written statement. (Emphasis added).

This section requires the Commission to make findings of fact and conclusions of law or to affirm or adopt the ALJ's "decision." Metcalf v. Castle Studios, 946 S.W.2d 282, 284 (Mo.App.1997). The "decision" includes the findings of fact and conclusions of law, whereas the "award" does not. *Id.*

In *Metcalf,* the Commission affirmed the legal advisor's[1] "award" and not the legal advisor's "decision." The Commission attached to its decision a document entitled "Award on Hearing" and the legal advisor's findings of fact and rulings of law. The court held that the affirmance of the legal advisor's award does not include the findings of fact and conclusions of law. *Id.* The court noted that its conclusion may be viewed as technical, but the Commission, as an administrative agency created by statute, is limited in its authority by the terms of the statute. *Id.* at 285. *See also* Hunt v. Laclede Gas Co., 869 S.W.2d 770, 773 (Mo.App.1993). However, in *Metcalf* the court held that the Commission's award was saved because the legal advisor's award included the findings of fact and conclusions of law by stating: "ATTACHED HERETO ARE THE FINDINGS OF FACT AND RULINGS OF LAW MADE IN CONNECTION HEREWITH." The court warned:

> In future cases, however, the commission should affirm or would be well advised to revise its decisions to adopt the administrative law judge's decision—the findings of fact and conclusions of law—as required by [Section] 286.090.

*Metcalf,* 946 S.W.2d at 285.

In the case before us, decided before *Metcalf,* the Commission affirmed the "award" of the ALJ pursuant to Section 286.090. The Commission attached to its award a document entitled "Award" and a document entitled "Findings of Fact and Rulings of Law." The Commission's order did not explicitly affirm or adopt the ALJ's "decision" or his findings of fact and rulings of law.

---

**1.** Section 287.616.2, RSMo (1994), provides, "Legal advisors shall also act in the capacity of associate administrative law judges in those of-

fices having only one administrative law judge and shall have jurisdiction to hear and determine claims upon original hearing."

■ It is evident from 1) the Commission's statements that it was affirming the ALJ's award pursuant to Section 286.090 and that it was incorporating and attaching the ALJ's award and 2) its act of attaching both the ALJ's award and the separate findings of fact and rulings of law that the Commission intended to affirm and adopt both the ALJ's award and the findings of fact and rulings of law. The *Metcalf* opinion, which advised the use of the word "decision" in future cases, had not been handed down at the time the Commission issued its award in this case. We conclude that the Commission's award effectively affirmed and adopted the ALJ's decision. Point one is denied.

■ For his second point claimant asserts that the Commission's finding that the primary injury on September 5, 1991 was the sole cause of his permanent total disability was not supported by the record. We disagree.

The Commission adopted the following findings:

> The testimony of Dr. Cohen confirmed that he was totally disabled from the injuries suffered as a result of the fall without regard to any preexisting disabilities. His February 28, 1995 permanent partial disability ratings did not change his original opinion.
>
> Accordingly, I *find* that claimant was on September 5, 1991 and has remained ever since then unable to compete in the open labor market and is therefore permanently and totally disabled as a result of the direct injuries caused by the September 5, 1991 accident. . . .
>
> As I have found that Mr. Maas became permanently and totally disabled solely as a result of the work-related accident and without regard to any preexisting conditions, it is not necessary to make any determinations with respect to any preexisting conditions or the liability of the Second Injury Fund. Accordingly, the claim is denied.

As previously stated, Dr. Cohen examined claimant on April 2, 1992 and determined that claimant was permanently and totally disabled due to his significant spinal cord injury on September 5, 1991. On February 28, 1995 Dr. Cohen reevaluated claimant to address Second Injury Fund liability. After review of claimant's medical history, Dr. Cohen concluded that claimant was permanently and totally disabled due to the combination of the primary work injury and his preexisting conditions. The Commission found that

> [t]his new opinion amounts to nothing more than stating that claimant's permanent and total disability also results from the combination of the primary work injury and his preexisting conditions. It is clear from Dr. Cohen's testimony that Mr. Maas was permanently and totally disabled as a result of the disabilities caused by [the] fall.

We defer to the Commission on issues concerning credibility and weight to be given to conflicting evidence and testimony. Smith v. Climate Engineering, 939 S.W.2d 429, 431 (Mo.App.1996). The Commission is free to disregard testimony of a witness even if no contradictory or impeaching evidence is introduced. *Id.* It is in the Commission's sole discretion to determine the weight to be given expert opinions. *Id.*

The Commission was free to believe Dr. Cohen's 1992 opinion that the September 5, 1991 fall was the sole cause of the permanent total disability and disregard Dr. Cohen's later opinion that claimant was permanently and totally disabled due to the combination of the primary work injury and his preexisting conditions. It is clear from the Commission's findings that it considered all of the evidence, including the voluminous collection of medical records, along with Dr. Cohen's testimony in order to arrive at its finding that the primary injury of September 5, 1991 was the sole cause of claimant's permanent total disability.

Accordingly, the Commission's finding that the September 5, 1991 fall was the sole cause of claimant's permanent total disability is supported by competent and substantial evidence and is not against the overwhelming weight of the evidence. Point two is denied.

The award of the Commission is affirmed.

RHODES RUSSELL and JAMES R. DOWD, JJ., concur.