Joseph BREEZE, Claimant–Respondent,

v.

HELM & SONS LUMBER COMPANY, Employer–Appellant, and Treasurer of the State of Missouri, as Custodian of the Second Injury Fund, Appellant.

Nos. 23300, 23310.

Missouri Court of Appeals, Southern District, Division Two.

June 28, 2000.

Motion for Rehearing and Transfer Denied July 14, 2000.

Application for Transfer Denied Aug. 29, 2000.

Douglas R. Kennedy, Poplar Bluff, Jeremiah W. (Jay) Nixon, Atty. Gen., Lee B. Schaefer, Asst. Atty. Gen., Jefferson City, for appellant.

B. Michael Korte, Korte, Smallwood, LLC, St. Louis, for respondent.

PHILLIP R. GARRISON, Chief Judge.

The issue is whether Billy Helm, d/b/a Helm & Sons Lumber Co. ("Helm"), had a sufficient number of employees to be qualified as an employer under the Workers' Compensation Law (the "Act"). The Administrative Law Judge ("ALJ") held that Helm employed five or more employees, and thus met the definition of "employer" pursuant to § 287.030.1(3) [1, 2] and awarded workers' compensation benefits to Joseph Breeze ("Breeze"). Since Helm had not insured his liability under the Act, the ALJ directed the Second Injury Fund to pay benefits to Breeze. Both Helm and the Second Injury Fund sought review by the Labor and Industrial Relations Commission ("Commission"), which affirmed the award and decision of the ALJ. Helm and the Second Injury Fund sought review by this court in appeals that have been consolidated. We reverse.

In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ. *Gordon v. Tri–State Motor Transit Co.*, 908 S.W.2d 849, 852 (Mo.App. S.D.1995). Where, as here, the Commission incorporates the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's award. *Kaderly v. Race Bros. Farm Supply*, 993 S.W.2d 512, 514 (Mo.App. S.D. 1999). Findings and awards of the Commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding on the court and fall within the court's province of independent review and correction where erroneous. *Leslie v. School Servs. and Leasing*, 947 S.W.2d 97, 99 (Mo.App. W.D.1997). Statutory construction and the determination of whether the evidence demonstrates that an alleged employer had sufficient employees to qualify for that status are questions of law. *See George–Brewer v. Pen Mar Southwest*, 980 S.W.2d 147, 149 (Mo.App. W.D.1998); *Atkinson v. Peterson/T & P Found.*, 962 S.W.2d 912, 916 (Mo.App. S.D.1998).

Various people worked at Helm's sawmill from time to time. A full crew consisted of five or six employees, but the mill was sometimes run by as few as three people. Apparently, people would often not show up for work, or would show up and had been drinking. Helms would then call other people to see if he could get enough to run the mill that day. The people working at the mill always included Helm, and sometimes members of his family also worked there.

The evidence was less than clear, but it appears that the mill was only operated two to three days per week. There was conflicting evidence about the number of

---

1. All references to statutes are to RSMo Cum. Supp.1990, unless otherwise indicated.

2. Section 287.030.1(3) provides that any employer must have five or more employees to be deemed an employer for the purposes of the Act.

people working at the mill on the day Breeze's hand was injured, but Breeze testified that there were five employees working that day in addition to Helm and his brother Bobby Helm. One of those five was John Lineberry ("Lineberry"), Helm's brother-in-law. According to Lineberry and Helm, there were three people working at the mill on the day of the accident in addition to Helm, his brother Bobby, and Lineberry.

The ALJ found that since § 287.090.2 [3] provided that "no worker who is a member of the employer's family by marriage or consanguinity shall be included in the total number of employees of such employer . . .," Helm's brother, Bobby, and Lineberry, could not be counted as employees in determining if Helm had sufficient employees to be covered under the Act. He also found that there were only three other employees working that day, but that three other people had worked on days prior to the accident, and that there was a "pool" of workers that Helm sometimes called to try to get a crew to run the mill. The ALJ concluded that the "pool" of people that Helm sometimes called to work at the mill could be included in determining if Helm had enough employees to be covered under the Act. He found that within a "relatively" short period of time prior to Breeze's accident, Helm had employed eight non-relatives, and consequently, found that on the date of the accident, Helm employed five or more employees and was a covered employer operating under the Act. The Commission affirmed the ALJ's award.

Helm and the Second Injury Fund contend that the Commission erred because Helm "did not qualify as a[sic] employer covered under the Workers' Compensation Statute in that [Helm] did not have five or more employees as required by Section 287.030(3) RSMo." They argue that pursuant to § 287.030(3) an employer must have five employees to fall under the purview of the Act, and to qualify as an employee, a person must work for the employer for more than five and one-half consecutive days per § 287.020(6). They identify the issues to be considered in determining whether Helm had a sufficient number of employees to qualify as an employer as (1) the number of employees working on the day of the accident, and (2) whether the other people who worked occasionally qualify as employees under the statute.

The Commission did not hinge its ruling on there being five or more qualified employees working on the day of the accident. In fact, it found that there were only three "undisputed" employees of the employer that could be counted on that day after excluding Helm, his brother Bobby and Lineberry, pursuant to the applicable version of § 287.090.2. The Commission based its conclusion that Helm qualified as an employer under the Act on the existence of the "pool" of workers that he sometimes drew from in putting together a crew to operate the mill, and found that the number of employees actually working on the day of the accident was not the only factor in determining if Helm was a covered employer under the Act. It noted that the Act does not specify the period of time prior to the accident in question that is to be reviewed in counting employees against an employer, and that the courts have held that a reasonable time may be utilized for that purpose.

Section 287.020.1 provides, inter alia, that an "employee" means "every person in the service of any employer, . . . under any contract of hire, express or implied, oral or written, . . ." Subsection 6 of that statute says: "[a] person who is employed by the same employer for more than five and one-half consecutive work days shall for the purpose of this chapter be considered an 'employee.'"

The "five and one-half consecutive work days" requirement has been the subject of judicial interpretation. In *Metcalf v. Castle Studios*, 946 S.W.2d 282, 285 (Mo.App.

---

**3.** The version of § 287.090 in effect in 1990 when Breeze's accident occurred.

W.D.1997), the Western District of this Court said:

Section 287.020.6 requires a person to be employed—not working—for more than 5½ consecutive work days. An employee need not actually work more than 5½ consecutive days but need only be in the employer's employment for that length of time. To conclude otherwise would render persons working five days a week, eight hours a day, not covered by the [Act]. This would mean that an employer whose business was open seven days a week, but who required his employees to work five days for 40 hours a week, would be exempt even if the employer employed more than 1000 employees. This simply was not the legislature's intent. The General Assembly apparently intended the requirement that an employee must be employed for at least 5½ consecutive days to exclude temporary employees—those who were employed for only five days or less, terminated, and then rehired at a later time for another five days or less.

The *Metcalf* court concluded that since Castle Studios employed at least five persons for more than five and one-half consecutive days, it was subject to the Act. *Id.* at 286.

Under the reasoning of *Metcalf*, the issue here is whether the "pool" of persons sometimes called by Helm to work the mill constituted a group of five or more people "in the service" of Helm for more than five and one-half consecutive days, excluding those who were members of his family by marriage or consanguinity. The Commission concluded that Helm had a "pool" of employees working for him other than relatives, which consisted of Greg Watkins, Breeze, Darrell Barks, Dennis Jennewein, Gerald Colbert, John Colbert, Ronnie Calhoun and Greg Ponder. Of those, Watkins, Breeze and Barks were working on the day of the accident, in addition to Helm and his two relatives. There appears to be no issue but that these three would qualify as employees. The real is-

sue is whether there was sufficient evidence to support a finding that at least two of the others (Jennewein, Gerald Colbert, John Colbert, Calhoun or Ponder) would qualify.

John Colbert testified that Helm did not have a full-time crew continuously working there every day. He said that Helm had people that worked for him, but if one of them didn't show up he would call in somebody else to take their place ("[h]e might call in one of his friends or a neighbor, just somebody to fill in"). If the people who did not show up for work did so three or four times, they would be fired and Helm would get someone else. Colbert further described the situation as: "The ones that worked for him regular he would let us all know and we would work. If he couldn't get one of us to show up he would call on somebody else that would be willing to work to fill in." He further described the situation as being that there were always logs at the mill and "if you worked today you would ask everybody if they would be there tomorrow," and "if somebody didn't show up that day they would call in somebody else." He said there was quite a bit of turnover and that a lot of different people worked there from time to time.

John Colbert also testified that he had worked with Breeze at Helm's and also "worked with him with Kenny Walt," which we assume was another person for whom both Breeze and John Colbert worked at some unspecified time. When given a list of names which included himself, his brother Gerald, Dennis Jennewein, and Ronnie Calhoun, and asked if they were working for Helm as of the time of the accident and whether or not they were present on the job that day, he said "[n]o, not everybody that was named off was working at that time." He explained that "sometimes if we had enough people that showed up to work he wouldn't need to call in anybody else but if somebody didn't show up he would have to call somebody in to fill in." He also explained that until you missed three or four times you were still

part of the group that was on the call list, and that he knew of no one that had been taken off the call list as of the day Breeze was injured.

Lineberry said that a lot of times people would not show up for work. He said that some people worked at the mill "off and on." There were occasions when there was not enough men to run the mill, in which event, Helm would "sometimes" make some phone calls to round some people up or just forget it until the next day with the hope that everyone would show up.

Helm said that in running the mill he had to do a "lot of substitution." He said that the ones that did show up were sent home several times because not enough showed up to run the mill. In discussing the people he worked at the mill "off and on," he said that "I have worked half of Wayne County. Just fill-ins for help and have worked them a day or two and they couldn't handle it or didn't show up." He said that none of those people drew unemployment on him because they did not work long enough.

Another man who worked at the mill, Darrell Barks, testified that if the crew was short, Helm would call people to make up a crew, but sometimes they also ran the mill with as few as three people.

John Colbert testified that Jennewein was "another guy that worked there from time to time"; that if Colbert didn't show up, Helm "might call Dennis Jennewein" or if Jennewein didn't show up Helm might call Colbert to work that day. Colbert was asked if Jennewein was working for Helm as of the day of the accident in question, whether or not they were actually present that day, and he said that he was not. Lineberry testified that Jennewein "worked there from time to time." Helm testified that Jeenewein had worked "off and on" but it was "before that." Barks testified that Jeenewein wasn't working at the mill around that time; that he worked "maybe one or two days to fill in" at some point before the accident but

not after it occurred. We do not believe that based on this testimony Dennis Jeenewein can be said to have been employed or in the service of Helm for more than five and one-half days, and cannot be counted as an employee.

Gerald Colbert was another person the Commission found was in the "pool" of employees of Helm. Barks said about both Gerald and John Colbert, that "[t]hem boys would go get drunk and come in and it just wasn't worth working them anyway. We missed several days because they wouldn't show up." Like Jennewein, Helm testified that Gerald Colbert worked "off and on" before the accident.

The testimony about Ronnie Calhoun was that he worked there "off and on." There was no testimony, however, that he was employed either as of the time of the accident or for any definitive period of time prior to it.

Finally, John Colbert testified that Greg Ponder was one of the people that worked for Helm if someone didn't show up. The group of people comprising this group was described as a friend or neighbor of Helm's whom he might call as "somebody to fill in."

■ The Commission found that Helm had a "pool of employees that worked for him," and that simply because they did not all work every time the mill operated, it did not mean that they should not be counted as his employees. By the same token, the fact that all of the people referred to by the Commission may have at one time or another worked for Helm does not establish them as employees. The evidence about Watkins, Jennewein, Gerald Colbert, John Colbert, Ronnie Calhoun and Greg Ponder was at most, general in nature. It merely indicated that these people had worked an unspecified number of times over an unspecified period of time, as "fill ins." Although the Commission said that "[a]ll of the witnesses testified that John Colbert, Gerald Colbert, and Dennis Jennewein were working for the

employer immediately prior to [Breeze's] accident," we believe that statement mischaracterizes the record. Our review of the record indicates that there was no evidence indicating when or how many times any of these three, as well as Greg Ponder and Dennis Calhoun, worked for Helm. To say that any of these people, under this evidence, can be characterized as employees of Helm is a misapplication of the law.

The Commission correctly noted that, as indicated in *Metcalf,* "[t]he General Assembly apparently intended the requirement that an employee must be employed for at least 5½ consecutive days to exclude temporary employees – those who were employed for only five days or less, terminated, and then rehired at a later time for another five days or less." 946 S.W.2d at 285. There was no evidence from which the Commission could have concluded that any of the persons in question were employed by Helm (in the service of Helm under any contract of hire as per § 287.020.1) for five and one-half consecutive days.

The Commission also found that "[i]n this case, there was no evidence that any of the individuals in the pool were employed for 5 and ½ days or less and were temporary employees." This is also a misapplication of the law in that it appears to place the burden on the employer to show that the people he had sometimes called on to work had not been employed for the requisite time. Breeze had the burden of proof concerning the necessary elements of his claim, including proof that Helm was an "employer" subject to the provisions of the Act. *Brown v. City of St. Louis,* 842 S.W.2d 163, 166 (Mo.App. E.D. 1992). There was no evidence to support the Commission's conclusion that he was.

Under the evidence in the record here, the Commission's finding that Helm was an "employer" subject to the Act was a misapplication of the law. We reverse the award of the Commission and remand to the Commission for entry of an award consistent with this opinion.

MONTGOMERY, P.J., and BARNEY, J., concur.