Kevin PHILLIPS, Respondent,

v.

PAR ELECTRICAL CONTRACTORS, Plaintiff,

Hallier Services; and Treasurer of the State of Missouri—Custodian of the Second Injury Fund, Appellants.

Nos. WD 60898, WD 60899.

Missouri Court of Appeals, Western District.

Nov. 19, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Dec. 24, 2002.

Application for Transfer Denied Jan. 28, 2003.

---

Randall W. Schroer, Kansas City, MO, for Plaintiff.

George E. Kapke, Independence, MO, and Anemarie D. Mura, Kansas City, MO, for Appellants.

Ryan T. Linville, Lee's Summit, MO, for Respondent.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, JR., and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Hallier Services and the Second Injury Fund appeal the award of the Industrial Labor and Relations Commission ("the Commission"), which held that both were liable to make payments to Mr. Phillips in order to compensate him for his work-related injuries and/or disability.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1996, Mr. Kevin Phillips contacted Mr. Paul Hallier, owner of Hallier Services, to inquire about employment opportunities to drive commercial vehicles. Hallier Services specialized in providing drivers to transport trucks for companies that required them to be moved long distances. Accordingly, Hallier Services did not own the trucks that were moved by the drivers, although it did own "tow trucks," which would be used by the driv-

ers for transportation after delivering the truck that they had driven for one of Hallier Services' clients. Hallier Services maintained two offices: one in Odessa, Missouri, and another in Birmingham, Alabama.

In order to become and remain a driver for Hallier Services, one had to follow its established routine procedure for transporting its clients' vehicles. Typically, Mr. Hallier would contact a driver if his services were needed to transport a vehicle. Mr. Hallier would then advise the driver where the truck was to be picked up and where the truck needed to be delivered. If the driver agreed to take the job, he would meet Mr. Hallier at one of the offices to discuss the details of the job. The drivers were required to keep a log of their driving activities but were permitted to take any route they chose to deliver the truck. Often, when more than one truck was being transported for a client, Hallier Services' drivers would travel in a convoy.

The drivers were paid by the amount of mileage driven, at a rate of $.55 a mile. In order to work for Hallier Services, the driver was required to have a commercial driver's license. Hallier Services provided liability insurance that covered both the driver and the truck when a driver was delivering a truck for one of Hallier Services' clients. The drivers were required to contact business headquarters once they picked up the vehicle and then contact headquarters again once the truck was delivered.

On May 9, 1996, Mr. Phillips accepted a job to drive a truck owned by Par Electrical from North Kansas City to Denver, Colorado. Mr. Phillips traveled to Odessa in order to meet Mr. Hallier and the two other drivers who would be accompanying him on this job assignment. After picking up the trucks in Kansas City, this convoy of three trucks stopped in Salina, Kansas,

so that the truck that Mr. Phillips was driving could be repaired.

Later during the trip, Mr. Phillips was injured when the truck he was driving left the road and subsequently flipped over, causing severe trauma to his back.

Mr. Phillips filed for disability benefits, and the matter went before R. Carl Mueller, Jr., administrative law judge (ALJ). On December 11, 2000, the ALJ ruled that Mr. Phillips was not legally an "employee" under Missouri Workers' Compensation Law and, therefore, was ineligible for such benefits.

The Labor and Industrial Relations Commission reversed. In concluding that Hallier Services was responsible for temporary total disability (in the amount of $9,205.78) and permanent partial disability (in the amount of $30,172.80), it found that Mr. Phillips was an "employee" under the Act. Moreover, the award also contained a ruling that the Second Injury Fund was responsible for Mr. Phillips' medical bills (in the amount of $80,997.77).

Collectively, the two appellants in this case (Hallier Services and the Second Injury Fund) bring three points on appeal. First, it is contended by Hallier Services that the Commission erred by concluding that Mr. Phillips was an "employee" under the Act because he was actually an independent contractor. Second, it is argued (by both Hallier Services and the Second Injury Fund) that error occurred when the Commission found that Hallier Services fell under the statute's provisions because it was not an "employer" as defined by the statute. Finally, it is urged that the Commission erred when it awarded benefits to Mr. Phillips from the Second Injury Fund because his medical expenses had already been paid by Hallier Services' automobile liability insurer, and, therefore, the award constituted a windfall for Mr. Phillips.

## II. LEGAL ANALYSIS

In *Akers v. Warson Garden Apartments*, 961 S.W.2d 50, 52–3 (Mo. banc 1998), the Supreme Court of Missouri outlined the standard of review in workers' compensation cases as the following:

> Review is only on questions of law. The Court will modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award. When reviewing the sufficiency of the evidence, the Court is limited to determining whether the Commission's award is supported by competent and substantial evidence on the whole record. The evidence and inferences are reviewed in the light most favorable to the award, and the Commission's findings will be set aside only when they are clearly contrary to the overwhelming weight of the evidence.

*Id.* (citations omitted).

### A. Is Mr. Phillips an Employee Under the Statute?

In Point I, it is contended by Hallier Services that the Commission erred in awarding benefits to Mr. Phillips because under the statute he was not an "employee" and, therefore, was not eligible for benefits under the statute. In making this determination, the "facts of each case control whether the claimant is an independent contractor or an employee." *Gaston v. J.H. Ware Trucking Inc.*, 849 S.W.2d 70, 73 (Mo.App. W.D.1993). However, some general guidelines exist; an indicia of "employee" status is typically evidenced by the employer's "right to control" the means by which the job is completed. *Ceradsky v. Mid–Am. Dairy-*

*men, Inc.*, 583 S.W.2d 193, 197 (Mo.App. W.D.1979). In contrast, an independent contractor is one who works "according to his own methods, without being subject to the control of his employer, except as to the result of his work." *Miller v. Hirschbach Motor Lines, Inc.*, 714 S.W.2d 652, 656 (Mo.App. S.D.1986).

In analyzing which category an individual falls into under "the right to control" analysis, courts have developed various multi-pronged tests. One such test (relied on by the Commission in this case), which utilizes many of the factors commonly considered in the "right to control" analysis, is the following:

> (1) the extent of control, (2) the actual exercise of control, (3) the duration of the employment, (4) the right to discharge, (5) the method of payment, (6) the degree to which the alleged employer furnished equipment, (7) the extent to which the work is the regular business of the employer, and (8) the employment contract.

*Wilmeth v. TMI, Inc.*, 26 S.W.3d 476, 480 (Mo.App. S.D.2000). However, in employing the "right to control" test, we are not only guided by the aforementioned factors, but also by case precedent that has analyzed employment situations similar to the one presented today.

Such a case is *Gaston v. J.H. Ware Trucking, Inc.*, where this court was confronted with an employment relationship similar to that presented in this case within the context of workers' compensation benefits. 849 S.W.2d at 72–73. In *Gaston*, a truck driver sought workers' compensation benefits after being injured in a work-related accident. *Id.* at 73. In determining whether the driver was eligible for such benefits, the court had to make the initial determination of whether the driver was an "employee." *Id.* In doing so, the court first turned to the aforemen-

tioned "right of control" test, but held that "[a]lthough [the truck driver] had to call [employer's] dispatcher to find out where to pick up loads, deliver loads and keep in touch as to his whereabouts, this court believes those actions do not clearly demonstrate a right to control." *Id.* at 74.

Mr. Phillips' work relationship with Hallier Services bears a striking resemblance to the one in *Gaston.* Mr. Hallier required that his drivers contact him after picking up the truck, after dropping off the truck, and on regular intervals if anything out of the ordinary occurred. Moreover, like in *Gaston,* Hallier Services did not deduct taxes for its employees, and every truck driver had the discretion to refuse job assignments at will. *Id.* at 73. Also common with *Gaston,* this case deals with the employment status of a truck driver who exercised great independence on the job in certain respects, while remaining under centralized control in other regards. Accordingly, we follow the *Gaston* court's guidance that in such a situation, these facts do not conclusively demonstrate a "right to control" that would ultimately determine whether the truck driver is an "employee." *Id.* at 74.

■ "This court has held when the evidence does not clearly demonstrate the employer's actual or right to control, the 'relative nature of the work test' determines employment status for purposes of workers' compensation." *Id.* (citing *Ceradsky,* 583 S.W.2d at 199). Turning to the "relative nature of the work test," this analytical tool utilizes the following factors:

> the character of the claimant's work or business—how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is continuous or intermittent, and whether the duration

is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job.

*Id.* (citing *Ceradsky,* 583 S.W.2d at 199). In applying this test, the *Gaston* court looked at the fact that "[t]ruck drivers require a degree of skill," but balanced that fact against other facts like that the driver in this case worked for the company continuously and exclusively. *Id.* Moreover, it was found that the work the driver did for the company was the entirety of its business enterprise and, therefore, "essentially establishe[d] the renderer of the service an employee within the purposes of the compensation law." *Id.* (quoting *Ceradsky,* 583 S.W.2d at 198). As such, in *Gaston,* even though the employment contract the parties entered into expressly designated the driver an independent contractor, and also in face of the fact that the driver owned the truck which he drove, under the "relative nature of the work test" the court concluded that the driver was an "employee." *Id.* at 76.

■ Under "the relative nature of the work test," there can be no doubt that Mr. Phillips was likewise an "employee" of Hallier Services. Similar to *Gaston,* supplying truck drivers (like Mr. Phillips) was the entirety of Hallier Services' business. Mr. Phillips, after beginning to work for Hallier Services, drove trucks continuously for that organization, and Hallier Services provided the requisite liability insurance throughout their employment relationship. And although Mr. Phillips was not bound by contract from driving for other trucking companies like in *Gaston,* the record below establishes that Mr. Phillips, while employed by Hallier Services, never drove for another trucking company and subsisted on the earnings paid to him by Hallier Services. Moreover, none of the indicia of independence present in *Gaston* exists

here: there was no contract designation of Mr. Phillips as an "independent contractor," nor did Mr. Phillips own the trucks that he drove. Accordingly, under the "relative nature of the work test," Mr. Phillips must be considered an "employee."

We appreciate that arriving at this fact-based conclusion is not an easy task. However, we agree with the Commission that *Gaston*'s analysis is binding in this case, and not the case of *Porter v. Erickson Transport Corp.*, 851 S.W.2d 725 (Mo. App. S.D.1993), as the ALJ held. *Porter* is not persuasive because that court dealt with a common law negligence claim—not a workers' compensation claim. *Id.* at 729. Therefore, among other things, that court failed to take into consideration the long-standing principle reiterated by the Supreme Court of Missouri that workers' compensation "law is to be broadly and liberally interpreted ... and is intended to extend its benefits to the largest possible class ... Any doubt as to the right of an employee to compensation should be resolved in favor of the injured employee." *West v. Posten Constr. Co.*, 804 S.W.2d 743, 746 (Mo. banc 1991). Point One is denied.

## B. Is Hallier Services an Employer Under the Statute?

Appellants [Hallier Services and the Second Injury Relief Fund] bring a related argument in Point II, that is, that the Commission erred in awarding Mr. Phillips benefits because Hallier Services is not an "employer" under the Act and, therefore, is not subject to its provisions mandating payment of workers compensation benefits. Section 287.030.1(3) [1] requires that an employer have five or more employees to be covered under the Act. In addition, it is mandatory that each of these employees work for at least five and one-half consecu-

tive work days to fall under the statute. § 287.020.6.

Both appellants rely heavily on the case of *Breeze v. Helm and Sons Lumber Co.* in order to demonstrate that the Commission erred in concluding that Hallier Services was an "employer" under the Act. 23 S.W.3d 886 (Mo.App. S.D.2000). In *Breeze,* the court dealt with a similar work scenario as in this case, where the owner of a business had a pool of individuals available to contact in order to insure that the company had enough people to get the work done at any given time. *Id.* at 890. However, none of these individuals was under any obligation to accept an offer of work; if one individual was unable to work the owner simply went down the list to find someone else who was. *Id.* In concluding that this pool of individuals could not be considered "employees" under the statute, the Southern District noted that the record below "merely indicated that these people had worked an unspecified number of times over an unspecified period of time, as 'fill ins.'" *Id.*

However, although the work-assignment system in *Breeze* is similar to our case, Hallier Services' work record of their pool of employees, which was presented to the Commission, is not nearly so vague as in *Breeze.* Here, Mr. Phillips provided specific and detailed records that documented how much each one of these individuals in the work pool was paid. This documentation is significant because the amount Hallier Services paid each individual was directly correlated to how much they drove, at a rate of $0.55 per mile driven. And as the Commission pointed out in its award, there were more than six of these individuals in the work pool who made over $15,000 in 1996. Moreover, during his testimony, Mr. Hallier admitted

---

1. Unless otherwise indicated, all statutory citations are to RSMo 2000.

that for a majority of Hallier Services' work he used a core group of five to ten drivers and that at any given time he typically had four to five drivers on the road. Taken together, this was a sufficient evidentiary basis for the Commission to conclude that Hallier Services was an "employer" under the Act.

■ We must pause to address the Second Injury Fund's ("SIF") argument that because "no evidence was presented that any of those drivers *worked* more than five and one-half consecutive days," Hallier Services cannot be deemed to be an "employer" under the Act. (emphasis added). We expressly addressed, and rejected, this argument in *Metcalf v. Castle Studios*, 946 S.W.2d 282, 285 (Mo.App. W.D.1997), stating the following:

> Section 287.020.6 requires a person to be employed—not working—for more than 5 1/2 consecutive work days. An employee need not actually work more than 5 1/2 consecutive days but need only be in the employer's employment for that length of time. To conclude otherwise would render persons working five days a week, eight hours a day, not covered by the Workers' Compensation Act. This would mean that an employer whose business was open seven days a week, but who required his employees to work five days for 40 hours a week, would be exempt even if the employer employed more than 1000 employees. This simply was not the legislature's intent.

As previously stated, there was ample evidence before the Commission to conclude that Hallier Services employed over five employees by keeping a core group of drivers who performed a majority of the company's services on a routine basis. Accordingly, in keeping with the Supreme Court's guidance that "[t]he law is to be broadly and liberally interpreted ... to extend its benefits to the largest possible class," we conclude that Hallier Services was an "employer" under the Act. *West*, 804 S.W.2d at 746. This point is denied.

## C. Is The Second Injury Fund Liable To Mr. Phillips For Medical Expenses That Have Already Been Paid For By An Insurance Policy Taken Out By Hallier Services?

Turning to the third and final point on appeal, it is contended by the Second Injury Fund ("SIF") that the Commission erred when it found that SIF was responsible for Mr. Phillips' medical bills because Hallier Services' automobile liability insurance carrier had already discharged that debt. Accordingly, under the statute and applicable case law, it is argued that this award from the Second Injury Fund to Mr. Phillips is a windfall to him and, therefore, constitutes legal error. In coming to the conclusion that SIF was in fact liable for these funds to be paid to Mr. Phillips, the Commission relied on *Wilmeth v. TMI, Inc.*, 26 S.W.3d 476 (Mo.App. S.D.2000) and that court's interpretation of § 287.270, which addressed a similar argument raised by SIF in that case. The Commission had the following to say about *Wilmeth* and how it applied to the facts of this case:

> The court, relying on § 287.270 RSMo, rejected the Fund's [similar] argument in *Wilmeth* because the benefits paid by the employer's accidental insurance company were not paid pursuant to the Act and the insurance company could come after claimant for reimbursement. Similarly, here, the medical bills that were paid by Hallier Services auto insurance company were not paid pursuant to the Act and the company could pursue claimant for reimbursement.

■ However, because this issue involves SIF, we must first turn to that part of the statute which deals with the SIF.

Section 287.220.5 states that "[i]f an employer fails to insure or self-insure as required in section 287.280, funds from the second injury fund may be withdrawn to cover the fair, reasonable, and necessary expenses to cure and relieve the effects of the injury or disability of an injured employee in the employ of an uninsured employer." *Id.* Accordingly, in order to determine whether SIF can be held liable under the statute, we must make the initial determination of whether Hallier Services was an "uninsured employer."

Since Hallier Services is an "employer" covered by the Missouri Workers' Compensation Act (*see infra*, Point II), it is required to carry workers compensation insurance as required by the statute. § 287.280.1. Section 287.280.1 states, in relevant part, "[e]very employer subject to the provisions of this chapter shall, on either an individual or group basis, insure his *entire* liability thereunder." (emphasis added). At first blush, it may seem that Hallier Services is an insured employer under the statute because the automobile liability insurance policy it took out paid for Mr. Phillips' medical bills. However, this is not the case because Hallier Services failed to insure its "entire" liability in regard to *workers' compensation*, and, therefore, for the purposes of this analysis, it must be deemed to be "uninsured." No party to this appeal, including the Commission, disputes this initial requisite determination (that Hallier Services was "uninsured") in order for SIF to be found liable for any payments under the statute.

Therefore, because Hallier Services was technically "uninsured," we must then determine whether SIF's funds are needed "to cover the fair, reasonable, and necessary expenses to cure and relieve the effects of [Mr. Phillip's] injury." § 287.220.5. Undoubtedly, that question must be answered in the negative. No party to this appeal disputes the fact that Mr. Phillips' past medical bills have already been paid and discharged by a source other than Mr. Phillips. Accordingly, any payment by SIF to Mr. Phillips would be superfluous and unnecessary because it would not be going to "to cure and relieve the effects of the injury or disability of an injured employee." *Id.; see also Mann v. Varney Constr.*, 23 S.W.3d 231, 233 (Mo.App. E.D. 2000).

Just recently, the Eastern District, in *Mann v. Varney Constr.*, had the following to say about SIF:

> The clear language of Section 287.220.5 expresses the legislature's intent to limit the liability of the SIF for employees who are not covered by insurance as required by law. The SIF is only liable "... to cover the fair, reasonable, and necessary expenses to cure and relieve the effects of the injury or disability of an injured employee in the employ of an uninsured employer...."

*Id.* at 233 (quoting § 287.220.5). In our case, there can be no confusion that Mr. Phillips never had to pay out of pocket or incur any liability for *any* of his medical bills. Therefore, it would *not* be "fair, reasonable, and necessary" to take funds from SIF to pay Mr. Phillips in light of the fact that these medical bills have *already been paid by a source other than Mr. Phillips.* § 287.220.5.

*Mann* further illustrates why we must come to this conclusion. In *Mann*, an employee was injured, incurring $130,085.13 of medical bills. 23 S.W.3d at 232. However, the employee's medical bills were submitted to Medicaid, and Medicaid "paid $19,547.50 to the health care providers as a full-settlement payment of the amount submitted to Medicaid." *Id.* Accordingly, the Commission ordered SIF to pay employee $19,547.50 because this was the only amount of med-

ical bills that employee was liable to pay himself as the result of a Medicaid lien.[2] *Id.* at 233. Employee appealed the Commission's ruling, asserting that "he should be reimbursed for the total of his medical costs [$130,085.13] instead of only the portion he would be liable for under Medicaid [$19,547.50]." *Id.* In rejecting the employee's argument (and his appeal), the Eastern District held that an employee should only be compensated for the employee's expenses as a result of the employee's injury. *Id.* Because employee "will only ever be responsible for the $19,547.50 paid by Medicaid," the *Mann* court held that paying employee any expenses over that amount would constitute a windfall and, therefore, would be contrary to the language and intent of § 287.220. *Id.* at 234. ("[I]t would be against public policy to allow claimants to recover a windfall from the SIF when their employers had not made insurance contributions required by law.").

Our case is similar to *Mann* in that an employee (Mr. Phillips) is seeking to have the SIF make payments to him for medical bills that he did not have to pay out of pocket. Mr. Phillips testified before the ALJ that he did not have to pay for *any* of his past medical bills. Accordingly, because "[t]he SIF is only liable '. . . to cover the fair, reasonable, and necessary expenses to cure and relive the effects of the injury or disability of an injured employee in the employ of an uninsured employer,'" Mr. Phillips is not eligible for any payments whatsoever from SIF. *Id.*

It is true, as Mr. Phillips points out, that the *Mann* court did ultimately affirm the Commission's award to the claimant from

SIF. 23 S.W.3d at 232. But the critical distinction in that case was that claimant was given the award to satisfy only the debts that he was still liable for: "$19,547.50 asserted as a Medicaid lien, $31,436.81 not submitted to or covered by Medicaid." *Id.* In order to compensate the claimant in *Mann* for the entirety of his out-of-pocket expenses, SIF was required to satisfy the Medicaid lien ($19,547.50) in order that he could receive full compensation for the "$31,436.81 not submitted to or covered by Medicaid."[3] *Id.* It followed then that the claimant in *Mann* was denied any payment from SIF for medical bills beyond that amount he was liable for. *Id.* In today's case, the record does not show that Hallier Services' liability insurance company has such a lien for Mr. Phillips' medical expenses and, therefore, based on the record before us, he is not currently liable for those debts and should therefore receive no compensation from SIF.

 Finally, Mr. Phillips argues that the Commission's monetary award to him from SIF was not error in light of § 287.270 and the Southern District's ruling in *Wilmeth v. TMI, Inc.*, 26 S.W.3d 476 (Mo.App. S.D.2000). Section 287.270 provides, in relevant part, as follows:

### Benefits from other sources no bar to compensation

No savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's insurer for liability under this chapter, shall be considered in de-

---

2. SIF was also ordered to pay employee $31,436.81 of medical bills not submitted to Medicaid that employee remained wholly liable for its payment.

3. Had SIF paid him only $31,436.81 (the amount not submitted to or covered by Medicaid), Medicaid could have levied its lien on this award ($19,547.50), leaving him far short of the necessary cash to cover his total liability: $51,084.31.

termining the compensation due hereunder.

Today, we choose to follow the Eastern District's holding in *Mann* by concluding that the "scope of SIF liability in cases where the employer is uninsured is defined in Section 287.220.5 and is not expanded by Section 287.270." 23 S.W.3d at 233–34. As the *Mann* court pointed out, "Section 287.220 makes no cross-reference to Section 287.270 concerning SIF liability in uninsured cases." *Id.* at 233. Ultimately, § 287.270 does not mandate payment of medical bills by SIF in the context of an uninsured employer when these bills are taken care of by a collateral source, especially when "this results in a windfall to the employee ... from the SIF." *Id.* at 233–34. Therefore, the Commission, in concluding that § 287.270 is the controlling provision of the statute in this case, instead of § 287.220.5, erred as a matter of law.

Accordingly, we must also decline to follow the Southern District's holding in *Wilmeth*.[4] 26 S.W.3d at 481–82. In *Wilmeth*, the Southern District was confronted with a similar scenario as today's case: employer paid for a non-workers' compensation insurance policy, and that insurance policy subsequently paid for claimant's medical bills. *Id.* One of the issues on appeal was, like in this case, whether SIF was liable to pay employee for medical bills already discharged by employer's insurance. *Id.*

In holding that SIF was liable, the *Wilmeth* court turned immediately to § 287.270 without even mentioning § 287.220.5 in the relevant analysis. *Id.* at 481–82. But § 287.220.5 is clearly the governing provision when it comes to SIF payments. That section states that "funds from the second injury fund may be withdrawn to cover the fair, reasonable, and

necessary expenses to cure and relieve the effects of the [worker's] injury." § 287.220.5; *see also Mann*, 23 S.W.3d at 233 (holding that "[t]he scope of SIF liability in cases where the employer is uninsured is defined in Section 287.220.5"). Ultimately, we depart from the Southern District's analysis in *Wilmeth* because, in determining whether SIF was liable, that court treated SIF just like an employer under the statute by applying § 287.270 instead of § 287.220.5. By failing to take § 287.220.5 into account in this analysis, the *Wilmeth* court did not consider whether SIF's funds were going to be used to pay "the fair, reasonable, and necessary expenses" of the employee. § 287.220.5. We are convinced that the legislature wrote § 287.220.5 for a purpose—specifically, as it says in the statute, to insure that SIF's funds are used only when needed "to cure and relieve the effects of the [worker's] injury." *Id.* Because the *Wilmeth* court failed to take these necessary considerations of the statute into its analysis, *Wilmeth* is not persuasive authority to support the Commission's award in this case.

SIF should not have to bear the cost of reimbursing an employee for claims or debts that have already been discharged by an employer's insurance policy. It was the Commission's reasoning in this case that "the company could pursue claimant for reimbursement" from the employee, and that, therefore, any such windfall would be short-lived. But no such reimbursement to SIF is guaranteed. For example, what about the claimant who is badly in need of cash, spends the funds, and then shortly thereafter flees the State? Moreover, there is simply no reason for SIF's limited funds to be spent on further burdensome litigation in recovering these funds from those who have no

4. This opinion has been reviewed and approved by order of the court *en banc*.

need for them. In actuality, this brings to light the true purpose that the legislature had when setting up this fund: to act as a secondary source of payment to employees who *need* workers compensation benefits. § 287.220.5; *see Mann,* 23 S.W.3d at 233.

Accordingly, because Mr. Phillips' debts stemming from his work-related injury have already been discharged, it would not be "fair, reasonable, and necessary" to pay these funds from SIF to Mr. Phillips because they would not be used "to cure and relieve the effects of [his] injury." § 287.220.5. Point III is granted.

### III. Conclusion

After reviewing the parties' briefs on appeal, and the entire record, we affirm the Commission's Final Award in part, and reverse in part. Specifically, we uphold the part of the Award finding that Hallier Services was responsible for temporary total disability benefits (in the amount of $9,205.78) and permanent partial disability benefits (in the amount of $30,172.80). However, we reverse the part of the Award that found the Second Injury Fund was responsible for Mr. Phillips' medical bills (in the amount of $80,997.77).

HAROLD L. LOWENSTEIN, P.J. and JAMES M. SMART, JR., J. concur.